UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                        Plaintiff,

                                            CRIMINAL CASE NO. 06-20140

v.

DETRICK CURTIS CONERLY,             HONORABLE PAUL V. GADOLA
                                                   U.S. DISTRICT COURT
                        Defendant.
_____/

## ORDER

### I.    Introduction

On August 14, 2006, Defendant pled guilty to one count of financial institution fraud in violation of 18 U.S.C. § 1344. Both the government and Defendant raised certain issues concerning Defendant's sentencing. In Defendant's Amended Motion for Guidelines Determination filed on November 18, 2006, Defendant requested a three-level reduction for attempt under Section 2X of the Sentencing Guidelines. The government, on the other hand, has requested that the Court make certain findings that would increase Defendant's sentencing level. First, the government requests that the Court find that the loss involved in the fraud conviction exceeded $5,000, and thus, that Defendant receive a two-level enhancement under § 2B1.1(b)(1) of the Sentencing Guidelines. Second, the government requests a two-level enhancement under § 3C1.1 for Defendant's obstruction of justice. Third, the government requests an upward departure beyond the Sentencing Guidelines range due to aggravating circumstances in Defendant's case. To resolve the sentencing issues, evidentiary hearings were held on November 21, December 4, and December 7, 2006.

For the reasons below, the Court denies Defendant's request for a reduction due to attempt.

The Court also grants the government's requests for a two-level enhancement due to the amount of loss and a two-level enhancement due to obstruction of justice.  At this time, the Court does not make a determination concerning the government's request for an upward departure beyond the range set out by the Sentencing Guidelines.

**II.     Applicability of § 2X - Attempt**

In Defendant's November 18, 2006 Amended Motion for Guidelines Determination, Defendant argues that he is entitled to a three-level reduction for attempt under Section 2X of the Sentencing Guidelines.  The Court finds that Defendant's argument is meritless.  Defendant pled guilty to a violation of 18 U.S.C. § 1344.  Appendix A of the Sentencing Guidelines indicates that § 2B1.1 of the Sentencing Guidelines, and not § 2X, applies to violations of 18 U.S.C. § 1344. Furthermore, Defendant completed all acts necessary to commit the financial institution fraud. Therefore, Defendant's fraud conviction will be considered under § 2B1.1 of the Sentencing Guideliness, and Defendant is not entitled to a three-level reduction for attempt under § 2X.

**III.    Applicability of § 2B1.1(b)(1) - Specific Offense Characteristics**

The applicable section on specific offense characteristics, § 2B1.1(b)(1), states that if the loss involved in the offense was $5,000 or less, there should be no level enhancement, and that if the loss exceeded $5,000 up to $10,000, there should be a two-level enhancement. Application Note 3 of the Sentencing Guidelines indicates that "loss" includes "intended loss."  "Intended loss" is "the pecuniary harm that was intended to result from the offense" and it includes "intended pecuniary harm that would have been impossible or unlikely to occur."  U.S.S.G. § 2B1.1, Application Note 3. The government argues that the loss involved in Defendant's offense exceeded $5,000, and thus, the two-level enhancement should apply.  Defendant argues that the loss was no more than $1,500.

2

The evidence indicates that on February 17, 2006, while on supervised release, Defendant entered into the Tri-Pointe Credit Union in Fenton, Michigan in order to apply for a credit card using the alias Richard Anderson. Not only was this action illegal, but it was in violation of the conditions of Defendant's supervised release. The government argues that Defendant attempted to fraudulently obtain an amount greater than $5,000 by requesting a credit card with a line of credit of $10,000. Defendant argues that he requested a credit card with a line of credit of only $1,500.

Dawn Watson, a loan officer for Tri-Pointe Credit Union, testified that on February 17, 2006, she met with Defendant about an application for a credit card. Watson testified that Defendant represented himself as a "Richard Anderson" and that he filled out an application for a credit card. Watson testified that Defendant wanted a $10,000 limit on the credit card. Though this request was not written down on the credit card application, Watson testified that Defendant verbally indicated that he wanted a $10,000 credit limit. When asked about her level of certainty on this point, Watson stated that she was "absolutely positive" that Defendant had requested $10,000. Watson testified that she was able to authorize a credit line only up to $5,000, and that approvals of a larger amount would have to go through Watson's senior officer.

Mack McConnell, CEO of Tri-Pointe Credit Union, who was a senior officer with the authority to approve $10,000 credit lines, testified that based on the documentation of Defendant's alleged credit score, history, and salary, the application would typically have been sufficient for approval of a $10,000 credit line. McConnell observed that Defendant represented a good class A credit score and a yearly income of well over $200,000 per year.

In response to this testimony favorable to the government, Defendant submitted the testimony of Richard Woonton as an expert qualified in credit, credit history, credit applications.

After considering the application information that Defendant represented to Tri-Pointe Credit Union, Woonton testified that in his experience, even though Defendant represented as having a high credit score, Defendant would only be approved for a credit amount of $300 to $500. Woonton explained that this low credit line was due to a lack of credit history in Defendant's fraudulent application. On cross-examination, Woonton testified that the additional factor of a yearly income of almost $240,000 would not change his analysis. Thus, Woonton testified that a client with a yearly income of $240,000 and a good credit score would only be eligible for a credit line of $300 to $500 based on the lack of credit history.

Defendant also took the witness stand to testify in support of his own position. Defendant testified unequivocally that on February 17, 2006, he had entered Tri-Pointe Credit Union in order to join the credit union and to apply for a $1,500 limit credit card, using the name of Richard Anderson. Defendant denied that he asked for a $10,000 line of credit. Defendant explained that he had created the alias of Richard Anderson, had fabricated all the credit details of his alias Richard Anderson, and that Defendant knew from this created credit file that the fraudulent documentation in his application was insufficient to sustain a request for a $10,000 line of credit. Defendant testified that when he sat down and talked with Dawn Watson, he asked her how much credit he could receive, and that Watson answered $500. Defendant testified that he then asked Watson for a credit limit of $1,500, and that Watson allegedly answered by saying that she did not know if that was possible, and that she would have to submit that request to a committee for approval.

In assessing the credibility of witnesses appearing before it, the Court considers many factors. First, the Court considers the nature of the testimonial evidence, and in particular, the witness's power to clearly recall the facts of the situation, the witness's ability to respond to

counsel's questions regarding the facts, and the overall consistency of the facts provided. Internal consistency as well as external consistency must also be evaluated, that is, the conjugation of one witness's account with that of another. Adding to the analysis, the Court must assess the elapsed time since the recalled events, the specificity with which the witness is called upon to describe the events, and the witness's motivation for the testimony. A determination of credibility is also affected by visual cues taken from the witness during testimony. The Court relies on the observations as to the witness's overall appearance and conduct. Such observations include, but are not limited to, the witness's eye contact; facial, hand, and body movements; vocal inflection; and overall demeanor.

Due to the conflicting testimony, the Court must now determine which account of the events when Defendant applied for a credit card on February 17, 2006 is more credible. Based on the Court's observation of the witnesses, their demeanor and their candor with the Court, the Court does not find Defendant's testimony to be credible. Defendant has a strong motive to commit perjury regarding how much credit he applied for as this will affect his Sentencing Guidelines range. The Court notes that Defendant has a long history of dishonest behavior with multiple convictions for fraud. Many times in a similar fashion, Defendant has fraudulently applied for loans at banks, for amounts between approximately $15,000 and $55,000. Thus, the Court does not find Defendant's testimony that he requested a line of credit for $1,500 to be credible. In contrast, Dawn Watson testified that Defendant had requested a line of credit of $10,000. The Court finds this testimony of Dawn Watson to be reliable. Watson's testimony was clear and consistent, and there were no reasons to doubt Watson's accuracy.

In an attempt to bolster his version of the events, Defendant used the testimony of his expert,

Richard Woonton, to show that based on his application materials, Defendant was unable to apply for a credit line greater than $1,500. The Court does not find the testimony of Woonton persuasive. Defendant's expert conceded that he had done credit applications several years ago, but was no longer in that line of work. Woonton testified that based on the lack of credit history in Defendant's application, Defendant would only be able to obtain a credit limit of a few hundred dollars. Woonton testified that the salary amount, even a salary of $240,000, was irrelevant and that a credit amount of only $300 to $500 would be available. In contrast to Woonton, Mack McConnell, CEO of Tri-Pointe Credit Union, is currently a senior officer who reviews and approves credit applications. McConnell testified that based on Defendant's fraudulent documentation, the alleged credit score, history, and salary typically would have been sufficient for approval of a $10,000 credit line. McConnell observed that Defendant represented a good class A credit score and a yearly income of well over $200,000 per year. Having considered these competing expert testimonies, the Court does not find the testimony of Defendant's expert Woonton to be persuasive, and doubts that an applicant with a $240,000 salary and a good credit record would not be sufficient to obtain a credit limit greater than $500.

For these reasons, the Court finds that Defendant requested a credit line of $10,000 and not $1,500. Consequently, the pecuniary harm that Defendant intended as a result of his fraudulent credit application was an amount greater than $5,000. Since the loss involved in Defendant's fraud conviction exceeded $5,000, a two-level enhancement pursuant to § 2B1.1(b)(1) of the Sentencing Guidelines is appropriate.

### IV.     Applicability of § 3C1.1 - Obstruction of Justice

The government requests that Defendant's sentencing level be increased by two levels due

to Defendant's obstruction of justice.   Defendant opposes the government's motion.

Section 3C1.1 of the United States Sentencing Guidelines states:

Obstructing or Impeding the Administration of Justice

If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels.

U.S.S.G § 3C1.1.

Application Note 4 found in the commentary following this section gives a non-exhaustive list of examples of conduct covered by this section including "committing, suborning, or attempting to suborn perjury."   U.S.S.G. § 3C1.1, Application Note 4.   Here, Defendant took the stand and testified under oath about the amount of loss in his fraud conviction.  Defendant testified with no hesitation that he had requested a credit line of $1,500, in direct contradiction to the testimony of the government's witnesses that Defendant had requested a credit line of $10,000.  As discussed in the section above regarding the amount of loss, the Court does not find that Defendant's testimony is credible.  The Court instead finds that Defendant did not testify truthfully when he stated that he only requested a $1,500 credit line, and not a $10,000 credit line.  Consequently, the Court finds that, by his false testimony, Defendant willfully obstructed or impeded the administration of justice during the sentencing proceedings.   This obstructive conduct is directly related to Defendant's offense of conviction.   Accordingly, the government's request for a 2-level enhancement for obstruction of justice pursuant to § 3C1.1 of the Sentencing Guidelines is appropriate.

**V.   Conclusion**

For the reasons stated above, the Court denies Defendant's request for a three-level reduction

due to attempt.  The Court also grants the government's requests for a two-level enhancement due to the amount of loss and a two-level enhancement due to obstruction of justice.  At this time, the Court does not make a determination concerning the government's request for an upward departure beyond the range set out by the Sentencing Guidelines.

Therefore, applying a base offense level of seven, plus two levels under § 2B1.1(b)(1) for an intended loss greater than $5,000, plus two levels under § 3C1.1 for obstruction of justice, minus two levels for acceptance of responsibility yields a total offense level under the Sentencing Guidelines of nine.

**SO ORDERED.**


Dated:   April 25, 2007                              s/Paul V. Gadola
                                                     HONORABLE PAUL V. GADOLA
                                                     UNITED STATES DISTRICT JUDGE

---

Certificate of Service

I hereby certify that on     April 25, 2007  , I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:
            Mark C. Jones; Patrick M. Cleary                              , and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants:              U.S. Probation Department           .

                                        s/Ruth A. Brissaud
                                        Ruth A. Brissaud, Case Manager
                                        (810) 341-7845